Dianne F. WILSON, et al.

v.

Robert J. DelPAPA and
Sweet–Dough, Inc.

Supreme Judicial Court of Maine.

Submitted on Briefs Sept. 20, 1993.
Decided Nov. 12, 1993.

Christopher J. Whalley, Blaisdell & Blaisdell, Ellsworth, for plaintiffs.

Nathaniel R. Fenton, Fenton, Chapman, Fenton, Smith & Kane, P.A., Bar Harbor, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS, RUDMAN and DANA, JJ.

CLIFFORD, Justice.

Defendants Robert J. DelPapa and Sweet–Dough, Inc. appeal from an order entered in the Superior Court (Hancock County, *Mead, J.*) attaching DelPapa's real estate pursuant to M.R.Civ.P. 4A. Because we discern no clear error in the trial court's finding that it is more likely than not that the plaintiffs will recover in an amount at least equal to the sum attached, we affirm.

At issue is a contract entered into by plaintiffs Dianne F. Wilson, Joseph A. Castellucci, Jr., and Richard Smith with DelPapa in December of 1991. The plaintiffs maintain that DelPapa agreed to sell them the Village Green Bakery, Deli & Cafe, a seasonal business located on Main Street in Bar Harbor. Also named as a defendant was Sweet–Dough, Inc., the corporation that operated the Village Green and of which DelPapa is president.

The plaintiffs met with DelPapa for the scheduled closing on April 1, 1992. DelPapa, however, refused to complete the sale. The plaintiffs filed this action in the Superior Court on August 17, 1992, alleging breach of contract and defamation. Pursuant to M.R.Civ.P. 4A, the plaintiffs also moved for attachment of DelPapa's real estate in the amount of $544,838. DelPapa filed a timely answer and counterclaim alleging that the plaintiffs breached the agreement by failing to produce a rental payment payable to the landlord of the Village Green premises on the date of the closing. Following a hearing, the Superior Court entered an order on December 22, 1992, attaching DelPapa's property in the amount of $150,000, finding that it is more likely than not that the plaintiffs will recover at least that amount.[1] The defendants then filed this appeal.

Orders of attachment are immediately appealable as an exception to the final judgment rule. *Foley v. Jacques,* 627 A.2d 1008, 1009 (Me.1993). We review orders of attachment for an abuse of discretion and for clear error. *Ford Motor Credit v. Thompson Machine,* 615 A.2d 608, 609 (Me.1992); *Foley,* 627 A.2d at 1009–10 (applying same standard of review to order dissolving *ex parte* attachment pursuant to amended Rule 4A).

---

1. Initially, the trial court signed an order of attachment finding that there is a "reasonable likelihood" that the plaintiffs would recover at least $150,000. This reflects the standard that was applicable prior to the most recent amendment of Rule 4A. *See Trans Coastal Corp. v. Curtis,* 622 A.2d 1186, 1188 (Me.1993). The record shows that the court considered the attachment motion based on the correct "more likely than not" standard and that the order referring to the "reasonable likelihood" standard was a clerical error that the court quickly corrected with a new order stating the correct standard. *See* M.R.Civ.P. 60(a). We therefore disregard the earlier attachment order and review only the corrected version.

### I.

▮▮ At the hearing on the motion for attachment, the attorney for the plaintiffs made certain factual assertions. DelPapa maintains that these assertions amounted to unsworn testimony and that the trial court erred by relying on them. "Because prejudgment attachment may operate harshly upon the party against whom it is sought, there must be strict compliance with the procedures prescribed by legislation and implemented by court rules." *First Nat'l Bank of Damariscotta v. Staab,* 505 A.2d 490, 491 (Me.1986). Motions for attachment must be supported by affidavit evidence that "shall set forth specific facts sufficient to warrant the required findings." M.R.Civ.P. 4A(c), (i). The arguments of counsel cannot substitute for the required sworn statements of relevant facts. *Englebrecht v. Development Corp. for Evergreen Valley,* 361 A.2d 908, 911 n. 2 (Me.1976).

▮▮ A trial court entertaining a motion for attachment reviews and assigns weight to affidavit evidence in the same manner that it does with other evidence. *See Ford Motor Credit,* 615 A.2d at 609. We will not disturb the trial court's findings based on the affidavits unless the affidavits contain no competent evidence to support the finding as to the plaintiffs' likelihood of success. While counsel for the plaintiffs did make certain factual assertions at the hearing that go beyond what appears in the affidavits, there is nothing to indicate that it is those assertions on which the court relied. Moreover, the affidavits themselves contain ample evidence to support the court's finding as to the plaintiffs' likelihood of success on the merits. The plaintiffs submitted two affidavits that include copies of the writings of the parties. The affidavits set forth the circumstances and substance of the parties' negotiations and the facts surrounding DelPapa's alleged breach. Because the finding of the court that it is more likely than not that plaintiffs will prevail on their breach of contract claim is supported by competent evidence on the record, we will not disturb that finding.[2]

### II.

▮▮ DelPapa also contends that enforcement of the contract between him and the plaintiffs is barred by the Statute of Frauds, 33 M.R.S.A. § 51 (1988). That contention is without merit. The Statute of Frauds bars enforcement of certain contracts "unless the promise, contract or agreement on which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith, or by some person thereunto lawfully authorized...."[3] 33 M.R.S.A. § 51. In this case, there is evidence of the existence of two signed writings. The first, dated December 12, 1991, is signed by DelPapa, and states DelPapa's terms for selling the business. The second apparently dates from January 14, 1992, is signed by both DelPapa and Wilson, and states additional terms, including DelPapa's agreement not to engage in a similar business in Bar Harbor for five years.

> [A] contract within the Statute of Frauds is enforceable if it is evidenced by any writing, signed by or on behalf of the party to be charged, which ... is sufficient to indicate that a contract with respect thereto has been made between the parties or *offered by the signer to the other party.*

*Restatement (Second) of Contracts* § 131 (1981) (emphasis added). Additionally, a series of writings may collectively satisfy the requirements of the Statute of Frauds even if none of the writings does so singly. *Kingsley,* 92 Me. at 33, 42 A. 249. Since it appears from the affidavits of the parties that the

---

**2.** DelPapa also argues that, contrary to the requirements of Rule 4A, the trial court committed reversible error by considering the plaintiffs' second affidavit, which was not served on DelPapa at the same time the summons and complaint were served. DelPapa did not make this objection before the trial court and therefore failed to preserve the question for appeal. *Bowman v. Dussault,* 425 A.2d 1325, 1329 n. 2 (Me.1981).

**3.** The contract in this case includes an assignment of the Village Green's lease and is therefore covered by the statute as a contract for an interest in land. *Kingsley v. Siebrecht,* 92 Me. 23, 27, 42 A. 249 (1898); 33 M.R.S.A. § 51(5). Moreover, as part of the contract, DelPapa agreed not to compete with the Village Green, also placing the agreement within the statute as an "agreement to refrain from carrying on a business." 33 M.R.S.A. § 51(8).

plaintiffs are in possession of a signed offer from DelPapa, and that the subsequent writing stating additional terms includes signatures of Wilson and DelPapa as the contracting parties, the Statute of Frauds does not bar the plaintiffs' claim.[4]

### III.

■ DelPapa also contends that the plaintiffs have not met their burden in establishing that they are likely to recover at least $150,000, the amount attached by the trial court. Rule 4A requires a showing not just as to the likelihood of success on the merits of the claim, but also as to the likelihood of recovery in an amount at least equal to the sum attached. *Jacques v. Brown,* 609 A.2d 290, 292 (Me.1992) (construing former version of Rule 4A). The amendment of Rule 4A to reflect the "more likely than not" standard means the plaintiffs must now convince the court by a preponderance of the evidence that they will recover an amount equal to or greater than the amount attached.

■ Applying the former language of Rule 4A, we have held that a party can make a sufficiently specific showing by providing evidence from which an "informed projection" can be made as to the amount of damages. *Bates Fabrics, Inc. v. LeVeen,* 590 A.2d 528, 531 (Me.1991). In this case, the plaintiffs' first affidavit states that DelPapa had boasted of having received an offer for the Village Green of $250,000, or $100,000 more than the purchase price in the contract at issue here. The plaintiffs also submitted an affidavit from an accountant who analyzed the financial documents DelPapa had supplied to the plaintiffs, and who estimated that the present value of the income lost by the plaintiffs over a period of years would be in excess of $500,000.[5] The court, however, did

not merely adopt the plaintiffs' estimate of damages, but rather used the data the plaintiffs presented to reach a reasoned, independent estimate that is substantially more modest than the amount the plaintiffs requested. The affidavits provided enough evidence for the court to have been convinced that it is more likely than not that the plaintiffs will recover at least $150,000.[6]

The entry is:

Order of attachment affirmed.

All concurring.

---

4. The defendants also argue that the court's attachment of DelPapa's property was clear error because the attachment amounted to an improper act of corporate veil piercing. This assertion lacks merit. The court noted that DelPapa appeared to be acting in his personal capacity in bargaining with the plaintiffs. Given the evidence in the affidavits, it was reasonable for the court to infer for purposes of the attachment motion that DelPapa was either acting on his own behalf or on behalf of Sweet–Dough as an undisclosed corporate principal. *See Frost v. Drew,* 586 A.2d 1242, 1243 (Me.1991).

5. The accountant estimated that the business could net a profit of $91,000 per year.

6. Because we find that the plaintiffs have met their burden as to the amount they are likely to recover based solely on the contract claim, we need not address the libel claim.