**ALI, INC., Plaintiff,**

v.

**Alan M. FISHMAN, Ira Levine, Gregory R. Moyer, Harvey E. Prawer, and Gilbert E. Prawer, Defendants.**

**Civ. No. 94–25–P–C.**

United States District Court, D. Maine.

June 22, 1994.

---

David P. Silk, Catherine Charette, Christian T. Chandler, Curtis, Thaxter, Stevens, Broder & Micholeau, Portland, ME, David F. Slottje, Kevin J. Lesinski, Diana K. Lloyd, Choate, Hall & Stewart, Boston, MA, for plaintiff.

Thomas G. Ainsworth, Robert M. Raftice, Jr., Ainsworth & Thelin, South Portland, ME, for defendant Fishman.

Steven E. Cope, Cope & Cope, Portland, ME, for defendant Levine.

## 442

Mark L. Haley, Arlyn H. Weeks, Conley, Haley O'Neil & Kaplan, Bath, ME, for defendant Moyer.

Jeffrey Bennett, Melinda J. Caterine, Herbert H. Bennett & Assoc., Portland, ME, for defendant Prawer.

### AMENDED ORDER GRANTING PLAINTIFF'S MOTION FOR APPROVAL OF ATTACHMENT

GENE CARTER, Chief Judge.

In this action Plaintiff seeks to recover on guarantees executed by Defendants to pay obligations of Landco Realty, Inc. (hereinafter Landco) under a promissory note and Mortgage and Security Agreement of which Plaintiff is the holder. Plaintiff has moved for approval of attachment and attachment on trustee process in the amount of $1,478,-280.53 against the property of each of the five guarantors. Motion for Approval of Attachment and the Attachment of Trustee Process (Docket No. 2).

Under Local Rule 14 and Maine Rules of Civil Procedure 4A and 4B, made applicable to proceedings in this Court by Federal Rule of Civil Procedure 64, attachment may be ordered by the Court upon a finding that

> it is more likely than not that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the aggregate sum of the attachment and any liability insurance, bond, or other security, and any property or credits attached by other writ of attachment or by trustee process shown by the defendant to be available to satisfy the judgment.

1. The "Guaranty of All Liability" provides in relevant part:

 For valuable consideration, the receipt of which is hereby acknowledged, the undersigned (each, any and all of whom are hereinafter called Guarantor) guarantee(s) due fulfillment to NORSTAR BANK OF MAINE (herein called "Bank") of all obligations of Landco Realty, Inc. to Bank, *whether direct or indirect, absolute or contingent, due or to become due, now existing or hereinafter arising,* which are incurred prior to the receipt by Bank of written notice of the revocation of this guaranty....

Me.R.Civ.P. 4A(c), *Trans Coastal Corp. v. Curtis,* 622 A.2d 1186, 1188 (Me.1993).

In support of the motion for attachment Plaintiff has submitted the Affidavit of J. Patrick O'Neill (Docket No. 4) ("O'Neill Affidavit") together with a copy of Landco's Promissory Note (the "Note") evidencing an obligation to Norstar Bank of Maine ("Norstar") for $1,600,000 dated March 10, 1987. O'Neill Affidavit at Exhibit B. Also annexed to the affidavit is a "Guaranty of All Liability" by each of the Defendants for Landco's obligations to Norstar, "its successors and assigns" dated March 10, 1987.[1] O'Neill Affidavit at Exhibit D. The affiant further avers that Landco defaulted on payments on the Note, that Defendants have been notified of this default, and demand for payment from both Landco and the Guarantors has been made. O'Neill Affidavit at Exhibit G.

The affidavit indicates that as January 25, 1994, Landco's obligations under the Note and Mortgage and Security Agreement were due in the following amounts:

| | |
|---|---|
| Principal: | $1,290,005.82 |
| Interest: | $ 107,036.10 |
| Late Charges: | $ 9,008.36 |
| Property Taxes Advanced: | $ 31,980.00 |
| Interest on Funds Advanced for Property Taxes: | $ 250.25 |
| Anticipated Collection and Legal Fees: | $ 40,000.00 |
| TOTAL | $1,478,280.53 |

*Id.* ¶ 20–24. Interest in the amount of $252.63 is also accruing on a daily basis. In response to the motion for attachment, Defendants do not dispute these allegations or the reasonableness of the anticipated collection costs. Responses to Motion for Approval of Attachment and Trustee Process. (Dockets No. 10, 12, 14, 21).[2]

> The guaranty shall inure to the benefit of Bank and its successors and assigns.... If this guaranty is signed by more than one person, whether or not they are member of a partnership, it shall be the joint and several obligation of said persons.

2. It should be noted that Defendant Levine's Response to the Motion for Attachment (Docket No. 21) was untimely. After Levine requested and was granted an extension of time to file a response until April 1, 1994, he did not file a response until April 5, 1994. Therefore, under Local Rule 19(c), he is deemed to have waived all objections to the Motion for Attachment. As the discussion of the other Defendants arguments

The Affiant avers that Plaintiff, Ali, Inc. ("Ali"), is now holder of the Note and the assignee of the Guarantees. On or about September 1, 1988, Fleet Bank of Maine succeeded Norstar as holder of the Note as the result of a merger. In 1991, Landco and each of the guarantors reaffirmed the terms of the Note. O'Neill Affidavit at Exhibit B, Allonge dated 1991. Thereafter, Fleet Bank of Maine assigned the Note to Structured Asset Securities Corporation Trust II (SAS-CO) on December 14, 1992. O'Neill Affidavit at Exhibit B, Note Allonge dated December 14, 1992. Finally, on December 17, 1993, SASCO assigned the promissory note to Ali, Inc. O'Neill Affidavit at Exhibit B, Note Allonge dated December 17, 1993.[3] Defendants do not contest any of these allegations. They do set forth arguments contesting whether the Note was a negotiable instrument and whether Plaintiff is a holder in due course or a mere holder.[4] 11 M.R.S.A. 3–1104, 3–1302. Although Plaintiff appears to be a mere holder, having acquired the Note after SASCO purchased it in a bulk sale with notice that it was overdue, Plaintiff is nevertheless entitled to recover on the instrument subject to valid claims of third parties and defenses available in simple contract action.[5] 11 M.R.S.A. 3–1302, 3–1306. Defendants do not assert any defense that casts doubt on the validity of the note.[6]

Defendants' principal arguments against attachment on the basis of the guarantees alone are frivolous. They contend, first, that the guarantees were "special guarantees" and not assignable and that, therefore, the Plaintiff cannot meet its burden of showing that it is more likely than not that it will prevail on the merits under Rule 4A and 4B. However, each guarantee clearly states that the guarantor agreed to cover Landco's obligations to Norstar "its successors and assignees." Therefore, the contention that the guarantees were not assignable is unconvincing.

As a second argument against attachment, Defendants contend that the $1,478,-280.53 attachment Plaintiff seeks exceeds the amount of any potential recovery Plaintiff could be entitled to by virtue of the guarantees. They argue that this excess is due to the fact that the guarantees do not cover collection and attorneys' fees (estimated at $40,000) or property tax payments ($31,890).

will demonstrate, the result would be the same even if Levine had filed a timely response.

3. At each stage the Mortgage and Security Agreement was assigned along with the Note. (Docket No. 4, Exhibit D).

4. No reason is given for the assertion that the Note is not a negotiable instrument and, having examined the note, the Court is satisfied that Plaintiff is likely to satisfy its burden of proving that it is negotiable.

5. Defendants assert without substantiation that Plaintiff is not a "holder" of the instrument at all. 11 M.R.S.A. 1–201(20). However, once again there is no allegation which supports this statement. A "holder" in the case of a negotiable instrument payable to an identified person is that identified person if the person is in possession of the instrument. *Id.* The Note at issue in this case is endorsed to the order of Ali, Inc. and Ali is in possession of the Note.

6. The Prawers and Fishman do argue that previous holders of the Note disclosed "confidential financial information" in violation of 9–B M.R.S.A. § 161 and that there was a violation of the Freedom of Information Act. 5 U.S.C. § 552. Answer by Prawers (Docket No. 13), Ninth Affirmative Defense, and Verified Counter-claim. Neither of these arguments gain Defendants anything. Chapter 16 of the Maine Revised· Statutes Annotated, which prohibits improper disclosure of Confidential Financial Records, explicitly exempts "[t]he exchange in the regular course of business of credit information between a fiduciary institution and other fiduciary institutions or commercial enterprises, directly or through a consumer reporting agency." 9–B M.R.S.A. § 161(2)(F). Even if there were a violation of the section, the penalty for a violation of section 162 is a $1,000 civil fine. See 9–B M.R.S.A. 164. Nothing in this chapter of the Maine statutes suggests that a violation of this section would have the effect of voiding all contracts or other obligations between a financial institution and its customers.

The section of the Freedom of Information Act which Defendants claim was violated applies only· to "agencies" of the Government of the United States. 5 U.S.C. § 552. According to the Prawers, an "agency" called Recoll violated this provision. There is no allegation that that agency was an agent of Ali. If any violations occurred, Defendants have offered no support for the proposition that the violation is a defense to recovery or that such violations would have the effect of discharging Defendants from their guarantees.

Again, the plain terms of the guarantees belie this assertion, each guarantor pledging to guarantee "all obligations of Landco Realty, Inc to Bank, whether direct or indirect." This language, read in the context of the obligations assumed by Landco under the Mortgage and Security Agreement to reimburse the Bank for cost of collection and tax advances, renders the guarantors liable for the cost of collection and and the property tax payment made under the terms of the Mortgage and Security Agreement. *See Top Line Distributors, Inc. v. Spickler,* 525 A.2d 1039, 1041 (Me.1987).

 Finally, Defendants contend that Ali must credit the value of the real property which secured the Note pursuant to the Mortgage and Security Agreement. This assertion flies in the face of Maine law governing guarantees. As the Law Court has recently reiterated:

> The "undertaking of a guarantor is his own separate and independent contract, distinct from the principal debtor." Our rules permit an attachment of the property of the guarantor in the amount of the probable judgment against him or her less any insurance, bond, other security or credits "shown by the defendant to be available to satisfy the *judgment.*" Collateral provided to secure the obligation of the principal debtor does not secure the independent obligation of the guarantor.

*Casco Northern Bank, N.A. v. Moore,* 583 A.2d 697, 699 (Me.1990) (citations omitted, emphasis in the original). Nor does Maine law prevent attachment in the full amount of the likely recovery from each of several guarantors who have provided unconditional guarantees assuming joint and several liability as in the present case. *Chase Commercial Corp. v. Hamilton & Son,* 473 A.2d 1281, 1284 (Me.1984). Finally, it is not necessary for Plaintiff to proceed against Landco in order to recover by separate action on the Guarantees. *Top Line Distributors, Inc.,* 525 A.2d at 1040.

 The Court is satisfied, based on the Affidavit of J. Patrick O'Neill and the accompanying documentation, that Plaintiff has met its burden of demonstrating that it is more likely than not that Plaintiff will obtain a judgment against Defendants that would at least equal the amount of the attachment sought. Defendants have not disputed the amount owing on the Note or that attorneys fees and tax payments were among the obligations that Landco assumed under the Mortgage and Security Agreement. Defendants do not challenge the reasonableness of the amount of the attorneys' fees [7] or the fact of the payment of property taxes.

Accordingly, it is *ORDERED* that the Motion for Approval of Attachment and Attachment of Trustee Process be, and it is hereby, *GRANTED.*

---

7. Even if the cost of this action is less than that anticipated by Plaintiff, interest exceeding $250 is accruing on a daily basis; thus, a judgment significantly higher than the attachment is likely.